The next case on our call of the docket today is case number 110765, People v. Earl Lee Marshall, Agenda No. 3. Counsel, are you prepared? Yes, sir. Please proceed. Thank you, Mr. Chief Justice. May it please the Court and Counsel, I am John Gleason of the Appellate Defender's Office in Mount Vernon, representing the appellant Earl Lee Marshall. This appeal concerns Section 5-4-3 of the Unified Code of Corrections, the statute that created a database for criminal DNA profiles. In order to build that database, the statute demands blood, saliva, or tissue from any person who is convicted of a felony or meets any of the other stated criteria. It also demands that he pay a $200 fee in connection with the analysis of that specimen. The question is whether the statute requires just one specimen, just one fee, just one DNA profile per qualifying person, or requires another specimen, another fee, and another DNA profile every time the person meets one of those criteria, is convicted of a felony or whatever else. Is this a question, Counsel, of statutory interpretation? It is a question of statutory interpretation. And so if we look at the plain meaning of the statute, where does that get us? Plain language. Well, I think it gets us where I am suggesting. The statute states that, quote, any person, end quote, who is convicted of a felony is institutionalized as sexually dangerous, is committed as sexually violent, et cetera, must submit a sample and must pay the $200 analysis fee. I suggest to your honors that the statute thus speaks in terms of defining a population, specifying those people whose DNA profiles must be included in the database. I would ask the court to distinguish the language of Section 5-4-3 from, for example, the language of the HIV testing statute, which is just a few sections down in the corrections code. The HIV testing statute says that a defendant must be tested for HIV whenever he is convicted of any of the stated sex crimes. So no matter how many times he has been convicted of a sex crime, no matter how many times he has been tested for HIV in connection with one of those convictions, if he gets another conviction for one of those sex crimes, he must be tested for HIV. It's a triggering event, a conviction for one of those sex crimes. Now, that makes perfect sense with HIV testing, because a person's HIV status can change. He can go from negative to positive between convictions, so to speak, and we need to know the current HIV status for him. Section 5-4-3 is totally different. It does not speak in terms of triggering events. It does not say that something must happen, that a sample must be taken every time some triggering event occurs. It defines the population of people whose DNA profiles must be included in the database. Sorry? How do you rationalize that, then, with subparagraph A, which says any person convicted or found guilty of an offense, et cetera, and then paragraph J says any person required by subsection A shall, in addition. That sounds very similar to what HIV statute requires. Pardon me just a moment. I brought a copy of the statute. May I ask Your Honor to refer to this? I'm looking at 5-4-3A, which talks about any person convicted shall be required to submit specimens, and then J provides for the fee, a fee for any person required by subsection A to submit the specimens. How can you distinguish that from what HIV statute says about any person convicted? Well, subsection J, any person required by subsection A to submit specimens of blood, saliva, or tissue to the state police for analysis and categorization, in addition to any other disposition, shall pay an analysis fee of $200. Well, when he is ordered to submit the sample, he must pay the $200 analysis fee. And he's ordered to submit the sample because he's a person convicted under paragraph A. Right, he is a person convicted or a person found to be sexually dangerous or whatever else. I'm saying that those phrases, is convicted of a felony, is found sexually dangerous, et cetera, simply defines all of the people who must submit samples and be included in the database. I don't see that that requires a new specimen, a new fee, a new DNA profile, every time the person is convicted or every time he meets any of those other criteria. Isn't the problem here what Justice Garmon asserted in her first question about statutory construction? This is here because there's a split in the case law, right, Marshall and Rigby, right? Correct, there's a split. And Marshall basically said, shall means shall, no exceptions in the statute, every time you're convicted, new analysis, new $200. Is that fair? Yes. And then Rigby says, quote, 543 requires a single DNA sample remain in the database for each person convicted of a qualifying offense, and that, quote, if an offender's previous sample was expunged for whatever reason, a subsequent conviction would naturally require a new sample be taken, and this would be sufficient for the maintenance of the DNA database. So now Rigby reads into the statute, right? Well, if you have one conviction, that's enough. Then has to tailor the statute to where there's an expungement. They might need an additional DNA sample. Rigby doesn't tell us where that is in the statute and how they came up with that. They just say it's reasonable. So wouldn't, to go along with your interpretation and the Rigby court interpretation, Rigsby court interpretation, wouldn't we go far afield from plain language? No. I think that you would be. Well, that was the right answer from your perspective. That was a good start. I think it would be right in line with the plain language. The plain language of 5-4-3, unlike the plain language of, for example, the HIV testing statute, does not require a DNA specimen and the fee and generation of a DNA profile every time some triggering event occurs. It simply defines all of those people whose DNA profiles must be included in the database. It says if you have been convicted of a felony, if you have been found sexually dangerous, et cetera, you must be included. You must submit a specimen. If the person already is a person. Let me say this. Convicted of a felony, right? So convicted of a felony in 2005 shall submit. Convicted of a felony 2010. How do we get around convicted of another felony shall submit? Well, I mean it doesn't say convicted of another felony. No. It says convicted of a felony shall submit. We have two felonies in my example, right? Right. Well, the person was previously convicted of a felony and presumably he gave the specimen according to law. At that point, the statute has been fulfilled. Now, the demands of the statute has been fulfilled. The purpose of the statute has been fulfilled. His DNA profile is on file. It's in the database. I mean nothing more is needed to comply with the statute. How would a trial judge know that? If you're sitting in Sangamon County and you see somebody's pre-sentence and they've been convicted in Cook County of a felony offense, are you supposed to presume that their DNA is on file or what kind? As a practical matter, how would the judge here know that there is a DNA sample on file that hasn't been expunged and still valid? Right. In this case, for example, the probation department was ordered to do a PSI and it reported back that Marshall's DNA profile was registered with the ISP. So the judge would know it from the PSI, the pre-sentence investigation report, just as he would know whether the person had a previous conviction for something that now requires a higher minimum sentence in the new case. I think that's the main way he would know. It's very easy to contact the state police. You know, I did it. I contacted the state police and found out that Marshall had a DNA profile in the database and it was taken in 2002. It's on file. So, you know, the probation department can easily find that out just as they could find previous convictions or any of these other things that are relevant to sentencing. Doesn't the Rigsby case represent one of the public policy reasons for reading the statute the way we do? Conviction in 2005, it's on file. Doesn't have the 2010, back to my hypothetical, the 2010 felonies as well? We already have the DNA sample on file. After that period of time, the conviction regarding 2005 is expunged. No DNA sample on file. I should point out that, and I definitely will answer the question, but I should point out just for background, that the statute allows for expungement of a DNA profile from the database if the person's conviction has been reversed on the basis of actual innocence or if the person has been pardoned by the governor and the governor's statement says that it is due to actual innocence. That section is a bit puzzling because I never saw a court of review reverse a conviction on the basis of actual innocence. They always do it on the basis of failure to prove guilt beyond a reasonable doubt. But be that as it may, that's what the section says. If the conviction is reversed on the basis of actual innocence, the DNA profile can be expunged from the database. Well, it happens very rarely. I've never seen it happen. But still, you know, theoretically, you would think somebody might be able to slip through the cracks there. But the statute, 5-4-3, includes what I have come to think of as a fail-safe. Maybe I can refer to the subsection. That subsection, subsection F-1, pardon me, that's the expungement subsection. The subsection that I am looking for, the one that I think of as the fail-safe, says that the failure of a person to, oh, pardon me, it's subsection L, the failure of a person to provide a specimen, or of any person or agency to collect the specimen, shall in no way alter the obligation of the person to submit such specimen or the authority of the ISP to collect the specimen. So if he has been, if that person in your hypothetical has a new conviction, he is obligated to submit a specimen, and the ISP is authorized to take that specimen. Also, the ISP has promulgated a rule, I think, related to that subsection, and it says that if a person is a qualifying offender, in other words, he's somebody who must have his profile in the DNA database, and he has not yet submitted a sample or does not have a profile in the database yet, the state police or designated agency can go to the state's attorney and ask him to request, to ask the court for an order for a specimen. So that's how the ISP implements what I consider the fail-safe subsection of the statute. Does that answer the question, Your Honor? What is the concern here about being swabbed a second time? Is it because the defendant cannot afford to pay? Well, that would be. I mean, there is some minimal intrusion in the sense that, you know, his arm is stuck. But, yes, the DNA analysis fee of $200 and the submission of a sample really do go hand in hand. If he cannot afford to pay and the state cannot collect from him, who pays? Taxpayers. In these times of budget cuts and restraints, and it just isn't starting now, it's been going on perhaps since the statute was amended, what are the reasons you think the costs should be added on or paid by taxpayers when it serves, in those situations where it would serve no purpose? Would that impact upon the legislative intent? Yes. I think I understand the question. And my response is that there is no reason to stick the taxpayers with that expense. Would the legislature intend to have the defendant continually perform or give a swab when there's no reason to do it other than the statute, the qualifying offenses provide? I cannot imagine that the General Assembly intended for the state police and the other authorities to draw this blood, take these swabs, do the DNA analysis, store the profile in a database when it's unnecessary, when there's no reason for it, when the person already has a DNA profile in the database. That's my answer. Counsel, is the statute discretionary with the trial court? In other words, does the judge have discretion to say, yes, you should have another test, or no, you shouldn't have another test? Or is it not discretionary if there's been another test? Could you comment on that? If the person already has a DNA profile in the database, the court does not have the authority to order another specimen to be taken. Now, if he does not have a specimen in the database, the court must order the taking of a sample. When we look at the plain language, again, of the statute, if it was the legislature's intent that there only be one sample or specimen in the database, that could have been accomplished very simply by saying, if there is no other sample already on file, then the person convicted shall go. Aren't we being asked to read that into the statute? Aren't you asking us to do that? I do not think so. As I pointed out, the statute does not require a DNA specimen and a fee and generation of a DNA profile every time some triggering event occurs. It just defines the population of people whose DNA profiles must be included in the database. So I do not think that, Your Honor. I do not know what the lights mean. I still have some time, I think. You do. All right. I would just like to add that the Illinois State Police, which administers and enforces this statute, apparently agrees with the statutory interpretation that I suggest. The ISP has promulgated rules delegating to sheriffs, the DOC, et cetera, responsibility for collecting the samples. The rules are found in Title 20 of the Illinois Administrative Code. And those rules of the ISP explicitly state that the sheriff, DOC, et cetera, is to take a sample from a person only if the person's sample has not previously been taken. In other words, if the person's sample already has been taken, his DNA profile is already in the database, the ISP has no interest in getting another sample or generating another DNA profile. You know, the second, third, or seventh profile is just like the first one. That's the beauty of DNA profiles for identification purposes. They never change. They're always the same. So the ISP knows that if the person submitted a sample in some previous case and his DNA profile is now in the system, there's no need to get another specimen and generate another profile. So I ask this Court to hold that Section 5-4-3 requires just one specimen, one DNA analysis, one DNA profile per qualifying individual. That holding would require vacating that portion of the sentencing order that requires Marshall to submit a sample and to pay the $200 analysis fee. Thank you. Thank you, Mr. Gleason. Ms. Saunders, you may proceed. Good morning. May it please the Court. Assistant Attorney General Catherine Saunders for the people. The defendant conceded in his brief that he's forfeited the sole issue presented by this appeal because he failed to raise in his motion to reconsider his sentence. And this Court should enforce that forfeiture because the trial court's order requiring him to provide a DNA sample and pay the attended $200 analysis fee is simply not void. To the contrary, the trial court's order was required by the plain language of Section 5-4-3. Subsection A says, and I'm paraphrasing, of course, but the text of the statute is available in the appendix of the blueprint. Subsection A provides that anyone convicted of a felony shall be required to submit a DNA sample. Subsection J, in turn, provides that anyone required under Subsection A to provide a sample shall pay the analysis fee. Defendant obviously, as one convicted of murder, is convicted of a felony and therefore under the plain language he's required to provide a sample and pay the fee. In other words, a person convicted a second, a third, a fourth time is no less a person convicted of a felony under Subsection A. All of them are required to provide a sample, one sample per conviction. The defendant's contrary argument is flawed because it runs afoul of the primary tentative statutory construction which requires that we not read into the statute's exceptions, limitations, or conditions not expressed by the legislature. Surely the legislature was aware of recidivism. Pardon me. Can we read into the statute on the part of the legislature an intent not to pass a law that's absurd? Not to pass laws that are absurd? Yes, that are not absurd. There's no absurdity here, Your Honor. Yes, that is definitely a principle. It is a tentative statutory construction. The information is already on file to require the same information again and again. Yes, Your Honor. The reason the legislature was plainly aware of recidivism, and it could have provided, as the defendant suggested, one person, one DNA sample per person, but it plainly did not. And the most likely reason, Your Honor, is because the legislature also provided for expungement in cases of reversal or pardon on the actual innocence grant. And what expungement means is the DNA information is removed from the record, but also the entire sample is required to be destroyed. Aside from those occasions where information is removed from the record, what's the reason for giving additional tests other than just the qualifying offenses? I'm sorry. I didn't understand the question. That's all right. I do. Thank you. But the expungement issue, as counsel had said, is that once it's discovered that there is no sample there, then the defendant would have to give another sample because of the issue. I don't find any provision for that at all in the statute, Your Honor. I believe that's contrary to the statute. What would happen under the defendant's scenario, if we construe the statute as the defendant would have us construe it, is if there's a first conviction in order to provide a sample and pay the attendant fee, and a second conviction, then he's not required to provide a sample. If that first conviction is later vacated, then not only is the DNA information removed from the database, but also the sample is destroyed, and then we're left with a situation in which we have a convicted felon who's got no DNA information on file. But then I guess if there was another charge and conviction, then there would be another sample. I mean, the idea is, and the policy behind it, I think the legislature intended to make sure that there's a sample on file. Isn't that correct? And if there is no sample on file, then the next time there would be. I understand your point, but there would have been no order at sentencing in the case of a second conviction under defendant's construction of the statute requiring him to provide a sample or pay the fee. And defendants proposed fail-safe in subsection M. I simply read differently. It says the failure of a person to provide a specimen or the failure to the agency to collect the specimen within 45 days shall not alter the obligation. I read that as saying there is an obligation earlier, subsection of the statute that says you shall provide it within 45 days. I read subsection L here to simply state that if you exceed that 45-day time limit, it doesn't free you of the obligation to provide that sample. I don't, there's no, the statute doesn't provide any authority later for later collection of a specimen. It wasn't in that sentencing order on the second conviction. But it seems to me if there's already a DNA sample on file and you're only going to get the same components of the DNA sample, then it really just becomes a fee collection situation. If you keep on, if you have convictions, then it's just another fee, another $200, another $200. Because it's the same information you're getting. It is, in fact, the same information. But we always have to reckon with the possibility of the expungement of that information. Other than that, is there any particular unique value to multiple DNA samples being on file? I mean, as I understand it, I certainly set myself up as no expert, but I always understood that your DNA doesn't change. So is there some value to having multiple, some kind of a, besides the expungement possibility? The appellate court found two additional reasons, and they're actually related, not in Marshall, but the first district of the appellate court. There could be value, and the legislature could have found value in obtaining a new sample because an earlier sample may have degraded. And also there could be possible advances in technology. Now, granted, they would be slower paced. There wouldn't be likely huge changes in DNA technology. But the idea would be that you would have new samples that you could subject to possible new methods of testing and get more accurate results and perhaps more information in the future that would help to both implicate defendants from the database via a CODIS hit, or it's also used by defendants. They can access the database if the DNA evidence is exculpatory. So the appellate court has found that additional reason. Counsel, you seem to be suggesting, and I'm not sure it's in the record or in the statute, but that each time a sample is taken, that there is, in fact, an analysis done. Is that correct? That is what the statute says, yes. As a matter of practice, it's not in the record. I can't speak to that. So each time, even if we're talking about a small amount of time between the two samples, the laboratory has to conduct this kind of analysis? Yes. And, of course, that's one of the arguments that some of these cases have said leads to an absurd result, that where we have a time of economic issues and backlogs and crime labs, that they have to continue to analyze materials when they've only recently analyzed it. Correct? It's been difficult to draw a line. It's difficult to draw a line. The legislature can't know if there will be advances in DNA technology, perhaps, or if a sample is degraded. So they've simply elected, in a reasonable fashion, to provide that each defendant convicted of a felony shall provide one DNA sample and pay the fee per conviction. It's a case of line drawing, and they've chosen to draw the line here per conviction. So if you've got a defendant who is convicted of three qualifying offenses at the same time, are they required to give three samples and pay three fees? That, I would have to concede, Your Honor, would be an absurd result. No, it would be per conviction, per case number. But it doesn't say that in the statute either, does it? No, it does not say that. But, again, getting back to Justice Freeman's point earlier that we have to read a statute so as to avoid an absurd result, that, I would have to concede, would be an absurdity. So if a person is convicted on Monday of one qualifying offense and submits a sample and then is convicted on Friday of another, that person has to submit two. But if convicted the same day at the same proceeding, he submits one. It's a much closer question, but I would give you the same answer that I gave to Justice Tice, that the legislature had to draw the line somewhere. It's simply a matter of line drawing, and they chose to draw it here, one sample per conviction. And it makes sense, too, because of the expungement provision. If you tie that sample to the conviction, then you can go back. When the regulations in Subsection F-1 or the statute in Subsection F-1 requires that upon receipt of notice that a conviction has been expunged, that the ISP, again, delete the information from the DNA record and destroy the sample, but they're also required to notify the courts. So tying the sample to a particular conviction is a logical way of organizing the way the samples are handled and the DNA tied to each conviction. And Mr. Gleason is arguing, if I understand it correctly, that the population or the group is the person convicted. And under his argument, a person convicted submits a sample. Once done, it's done. You're saying if convicted of multiple offenses the same day, there's one, but if a different offense every day would result in perhaps a different sample every day. Yes, per case. I would say per case number. And that seems to be a logical place to draw the line for me, too, just for record-keeping purposes. In case of the admittedly unlikely event of reversal on actual innocence grounds and expungement, tie the sample, the appropriate sample, to the case number. Do we know if that's how it's recorded, if it's capped by case number rather than by name of the individual? I don't know, Your Honor. I'm sorry. The record doesn't say. I can find out and submit additional briefing if you'd like. I don't know offhand. This is not part of the argument, but whether this fee is classified as a fee or a fine, would that impact in any way on your argument as to when it could be assessed? No, Your Honor, it does not. Okay. I had a couple of points I wanted to make. One is that, for the defendant's HIV example, why the statute should be construed differently. The argument is flawed because, yes, a defendant could test negative the first time and positive another time, but a defendant who tests positive the first time is going to remain HIV positive. Subsequent testing would similarly be, under his interpretation, unnecessary. Contacting the state police to determine before sentencing whether a defendant already has DNA on file is a step that's not contemplated by the statute, and it's adding an additional duty for the parties in the court. And finally, I'd like to address the regulations, the Illinois State Police regulations. Justice Lampkin's dissent in Rigsby really had the best argument in this point. She said, well, that statute that says, or that regulation that says, the designated agency shall be the sheriff if he's in county custody, DOC if he's in the Department of Corrections, that statute itself, that regulation, does not speak to prior or subsequent offenses. And it's just as likely, just as reasonable to read that regulation as saying, it's to make sure that provision is to ensure that a defendant provides one sample per conviction, but only one per conviction. Such that if the defendant has already supplied a sample while he was in county custody, then when he goes to Department of Corrections custody, Department of Corrections has to check first to see if he's already provided a sample on this conviction when he was in county custody. It's just as likely, and I submit, more reasonable to read the regulation in that fashion. In closing then, I'd ask that this course enforce defendant's forfeiture, because the plain language of the statute requires any defendant convicted of a felony, be it his first, his second, or his third, or otherwise, to submit a DNA sample and to pay the attendant DNA analysis fee. And thus we ask that this course affirm the judgment of the appellate court. I have one other question, Counselor Saunders. I have one other question for you, please. Paragraph A says any person convicted or found guilty of an offense shall submit the specimen. Yes. And we discussed whether five convictions would result in five specimens, and you said per case number, I think. Paragraph J then says any person required to submit specimens shall pay an analysis fee of $200. Could there be an interpretation that even if five specimens were required under your argument, one analysis fee would be paid? One per sample, yes, Your Honor. Oh, it's per sample. Yes, one per sample. Anyone ordered under subsection A must also pay the analysis fee. They're tied together. That necessarily follows. The analysis fee follows the sample, yes. Thank you. Thank you, Ms. Saunders. Mr. Gleeson. Thank you, Your Honor. I think that the Illinois State Police has this statute figured out properly and is administering it very well. And that relates to a question that Justice Theis asked, whether the DNA profile is indexed by the person's name or by the case number. I might have something helpful there. I think that the appendix to my brief includes a letter from the Illinois State Police to me. I asked them whether Marshall's DNA profile is in their database, and they sent me a letter in October, five months ago. I simply gave his name and, I think, his date of birth. I think I tacked that on, too. I don't think I listed the case number at all. And they sent me a letter showing that Marshall's DNA was on file. And they mentioned the case that it was. It was a 2002 CF case, and they said there's one sample on file. Apparently, the ISP, in accordance with its interpretation of the statute and the rules that it promulgated, has not taken a sample or arranged to have a sample taken from Marshall in connection with this case. And, again, that's perfectly sensible. They already have a DNA profile on file for him. They don't need another one. In 2002, he became a person convicted of a felony. He was a person convicted of a felony on the day he was convicted, and the next day, and the next day, and the next day, and the next day, and the next day. Pardon me. And regardless of whether he got another conviction or not, he remained a person convicted of a felony. And under the statute, he is obligated to submit a specimen, and the ISP is obligated to analyze that specimen, generate a DNA profile, and store that profile in the database. And if somehow he slipped through the cracks in that 2002 CF case, we have the failsafe subsection and the rule from the ISP that allows the ISP to obtain a sample and generate its profile. Is forfeiture an issue here? The state says you forfeit. Oh, my forfeiture? Right. Well, I think not, because the basis for my appeal is saying that the circuit court did not have the authority to order this redundant sample with a $200 fee. So no authority for the sentence and avoid sentence or portion thereof can be attacked at any time. Mr. Fleeson, back to the expungement for just a second. Given that neither Section 543 nor the implementing regulations contain any requirement that offenders be screened for other convictions prior to a DNA sample being expunged, how could we be sure that a subsequent sample will even be sought in the first place? Subsequent conviction. Well, I mean, the ISP seems quite diligent about maintaining its database and obtaining the DNA samples when there hasn't been one previously taken. There has been one. In this example, there has been one previously taken that's expunged. Oh, right. Well, if it's expunged, he's no longer in the database. He's obligated to submit a specimen so that a profile can be generated and put in the database. Are there any further questions from the court? I thank you for hearing me out. Thank you, Mr. Gleeson. Case number 110765, People v. Earl E. Marshall.